UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MAURICO WALLS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 17-2549-JPM-tmp |
| | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTION, et.al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PENDING MOTIONS,
PARTIALLY DISMISSING COMPLAINT, AND DIRECTING THAT PROCESS BE
ISSUED AND SERVED ON DEFENDANT THOMPSON**

On July 28, 2017, Plaintiff Maurico Walls ("Walls"), an inmate at the West Tennessee State Penitentiary ("WTSP"), in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On August 17, 2017, Walls filed a motion for leave to proceed *in forma pauperis*. (ECF No. 5). On August 25, 2017, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.) The Clerk shall record the Defendants as Tennessee Department of Correction ("TDOC"), WTSP,[1] TDOC Commissioner Tony Parker and the following WTSP employees: Warden Jonathan Lebo, Former C/O Treveon Thompson, Former C/O Ms. First Name Unknown ("FNU") Carr, ATW FNU Fitz, Corporal ("Cpl.") C. Jones, IRC FNU DeBerry, STG FNU Gallaway, Sergeant ("Sgt.") FNU Parker, C/O FNU

---

[1]The Court construes claims against the West High Compound as claims against WTSP. The Clerk is DIRECTED to remove West High Compound as a Defendant and add WTSP.

Parker, Sgt. FNU Daniels, Disciplinary Board Sgt. FNU Chumley, C/O FNU Beavis, Cpl. FNU Pittman, Unit Manager FNU Hughes, and C/O A. Smith.[2] On September 28, 2017, Walls filed an amendment to his complaint, amending the claims against individual defendants to name them in their individual capacities. (ECF No. 11.) Pursuant to the complaint and amended complaint, Defendants Jones and DeBerry are sued only in their official capacity, and the remaining defendants are sued only in their individual capacity and the remaining individual defendants are sued in both their official and individual capacity.

## I. BACKGROUND

Walls alleges that on October 21, 2016, while "falsely imprisoned" in Unit 1 building at WTSP, he was assaulted, due in large part, to the actions of C/O's Carr and Thompson. (Compl. at 12, ECF No. 1.)

Walls contends that his assignment to Unit 1 was predicated on numerous false write-ups against him. (*Id.* at 21.) In May of 2016, Walls was moved from the SMU ("Special Management Unit") program and placed in maximum security for hitting C/O Thompson's girlfriend, C/O Austine who is not a party to this complaint. (*Id.*) Walls won his appeal of these accusations and was placed back in Unit 1, but several other disciplinary reports forced Walls back into maximum security. (*Id.* at 12.) Walls contends that in June 2016, he sent an appeal to Warden Lebo resulting in Walls's removal from super maximum security in August 2016, but that he was placed in Unit 6 maximum security due to negligence within the Unit 1 building. (*Id.*) On September 13, 2016, while Walls was in the SMU program, Warden Lebo spoke with Walls and then told the staff in Unit 6 not to place Walls into Unit 1 where C/O's Thompson and

---

[2]A. Smith is listed as a defendant in the Relief Requested portion of the complaint and referred to as a defendant in the complaint.

Carr worked. (*Id.*) Despite Warden's Lebo's request to his staff, Walls was assigned to the Unit 1 building. (*Id.*)

Because he was afraid for his safety in Unit 1 with C/O Thompson, Walls contacted the Rape Crisis hotline and spoke with Ana Wally, who informed Warden Lebo or Warden Lebo's staff about Walls's concerns. (*Id.*) Although STG Gallaway was sent to review the problem, he did not take any action to remove Walls from Unit 1. (*Id.*) On October 13, 2016, Walls was pulled into the hallway by Unit Manager Hughes and STG Gallaway during a discussion with other inmates. (*Id.* at 17.) After Walls returned to the room with the other inmates, Cpl. Jones and IRC DeBerry came into the pod and told all the inmates that Walls was a "Rat," which put Walls in fear for his life. (*Id.*)

On October 21, 2016, Walls was escorted to the recreation cages by C/O's Carr and Thompson. (*Id.* at 12-13.) While Walls was in handcuffs and shackles, C/O Thompson attempted to drag Walls to a recreation cage that was outside of the viconnect video system camera; however, Walls was able to wiggle to a cage that was in direct view of the camera. (*Id.* at 13.) After C/O Thompson removed Walls's restraints and locked the recreation cage, Walls contends that C/O Thompson, with retaliatory motive, put another inmate in Walls's cage for the purpose of harming Walls. (*Id.*) After Walls informed the other inmate that he would not fight him, the other inmate asked C/O Thompson to remove him from Walls's recreation cage. (*Id.*) When the other inmate was placed in his recreation cage a second time, Walls was forced to stand his ground and fight. (*Id.* at 14.)

Walls claims that when C/O Thompson tried to allow a second inmate, who worked in the laundry room, to enter Walls's recreation cage for the purpose of assaulting Walls, Walls was forced to pull his door closed to prevent a second assault. (*Id.* at 15.) This same "laundry

3

worker" inmate was brought to Walls's cell door by Cpl. Jones and threatened Walls the day prior to the assault. (*Id.*)

As a result of the fight, Walls contends that he had a split eye, bruised knees, and a hurt neck. (*Id.* at 4.) Walls claims that pictures of his injuries were taken by WTSP staff, and then he was taken to medical where they provided treatment for his eye, knees, and neck. (*Id.* at 15.) When Walls was released from medical, a shift supervisor placed Walls in Unit 2 building, which is next to Unit 1. (*Id.*) After Walls called Ana Wally a second time, she informed the staff at WTSP about Walls's assault. (*Id.* at 16.) As a result of an investigation by internal affairs, C/O's Thompson and Carr were fired. (*Id.*) Walls contends that he informed ATW Fitz about the abuse; however, ATW Fitz did not attempt to fix the problem or inform his supervisors about the problem. (*Id.*) Walls claims that he continues to have neck pain and suffers from mental distress, emotional anguish, and paranoid behavior. (*Id.* at 18.)

Walls alleges that on December 13, 2016, Lt. Rogers, who is not a party to this complaint, retaliated against him by returning him to the Unit 1 building from medical. (*Id.* at 19.) Walls contends that on December 27, 2016, following his re-assignment to Unit 1, he refused breakfast and lunch served to him by C/O Smith because she had previously written "Enjoy" and a smiley face on his food. (*Id.*) Walls argues that Warden Lebo should be held accountable in his supervisorial capacity due for lack of disciplining C/O Smith. (*Id.* at 20.) Between December 27, 2016 and March 2017, Walls was forced into assignment in Unit 6, maximum security for his safety. (*Id.* at 22.) Walls contends he was then assigned to super maximum in retaliation and as part of a conspiracy by Sgt. Parker whose nephew, C/O Parker, is married to C/O Carr. (*Id.* at 22-23.)

Walls alleges that on February 1, 2017, he was assaulted by Sgt. Chumley, Sgt. Parker, C/O Parker (who is married to C/O Carr), and Sgt. Daniels in retaliation for the firing of C/O's Thompson and Carr and for the filing of this lawsuit. (*Id.* at 20.)

Walls seeks monetary compensation against the individual defendants. (*Id*. at 9-11.)

## II. ANALYSIS

A. <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim as to which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement

of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause

of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B. § 1983 Claim

Walls filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

C. Claims Against the State of Tennessee

Claims against the TDOC, WTSP, and official capacity claims are construed as claims against the State of Tennessee. Walls cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court of the United States has construed the Eleventh Amendment to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472

(1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits against States, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a State is not a "person" for the purposes of interpreting 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Walls's claims against the State of Tennessee are hereby DISMISSED.

D. Personal Involvement

Walls's Complaint fails to allege any violation of his civil rights by Defendants Beavis, Pittman, or Hughes. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Walls's only allegation against Defendant Hughes is that he was part of a meeting, and Walls makes no allegations against Defendants Beavis and Pittman. Without an allegation of personal involvement in an unconstitutional act against Walls, the Complaint is DISMISSED WITHOUT PREJUDICE as to these Defendants.

E. Claims Against Defendants as Supervisors

Walls has no actionable claims absent Defendants TDOC Commissioner Parker, Lebo, Fitz, and Gallaway due to their supervisory roles including any alleged failure to investigate

8

Walls's complaints. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Id.*

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

An inmate has no cause of action against a defendant for failing to investigate or take remedial measures to the extent the defendant was aware of the inmate's complaints. A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). For the forgoing

9

reasons, Walls claims against Defendants TDOC Commissioner Parker, Lebo, Fitz, and Gallaway for supervisorial liability or failure to investigate claims are DISMISSED.

F. Eighth Amendment

Walls alleges a number of claims based on his treatment by prison officials at WTSP. Walls's claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Walls has alleged a number of grounds to support his Eighth Amendment claims. The Court considers the basis for each claim separately.

1. Verbal Abuse

With respect to Walls's claims of abuse by guards by either labelling him a "rat" or writing on food trays, Walls fails to state a plausible claim for relief. The allegations that Defendants Jones, Gallaway, and Smith threatened him without using physical harm is insufficient to state an Eighth Amendment claim. *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "use of racial slurs and other derogatory language"). Walls's claims for verbal abuse are therefore DISMISSED.

2. Failure to Protect

Walls's contends that Defendant Thompson and Carr were responsible for the assault against him by another inmate on October 21, 2016. In order to make out an Eighth Amendment failure-to-protect claim, a prisoner must show that a prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835. Walls cannot hold either of the individual Defendants liable unless he can show that C/O's Thompson and Carr subjectively knew of an excessive risk of harm to Walls's safety and then disregarded that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not state a claim for deliberate indifference. *Id.* at 838; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). First, regarding C/O Carr, Walls's only allegation is that she brought him to the recreation cages. Viewed in a light most favorable to Walls, this only alleges that C/O Carr acted negligently, which falls short of the deliberate indifference standard. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Without some plausible allegation that C/O Carr was aware of the risk to Walls's safety posed by the other inmate and disregarded the risk, the Complaint fails to allege that C/O Carr was deliberately indifferent to Walls's safety. Therefore, Walls's claim against Defendant Carr is DISMISSED. Walls's complaint states an Eighth Amendment claim for failure to protect against C/O Thompson sufficient to maintain that claim beyond this screening.

    3. <u>Excessive Force</u>

Walls next alleges that he was subjected to excessive force by Defendants Sgt. Parker, C/O Parker, Daniels, and Chumley. Where an inmate challenges a use of force by prison guards, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Wilkins v.*

11

*Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("The 'core judicial inquiry' [for an excessive force claim] was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm." (internal quotation marks omitted)).

A significant physical injury is not required to establish the objective component of an excessive force claim. *Id.* at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); *Hudson v. McMillian*, 503 U.S. 1, 7-9 (1992) (same). Conversely, the Supreme Court has made clear that trivial physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id.* at 9-10 (internal quotation marks omitted); *see also Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

Applying *Hudson*, the Sixth Circuit has held that a prison guard's use of *de minimis* force to return an inmate to his cell did not violate the Eighth Amendment. *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The defendants in *Johnson* were alleged to have "pushed [the prisoner] into his cell, pulled hard on the security strap attached to his handcuffs, hurting his wrists, and then, while removing his cuffs, attempted to bend his thumb back." *Id.*; *see also Tuttle v. Carroll Cnty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that

12

deputy grabbed inmate's privates and squeezed them "really hard" during a search insufficient to state an Eighth Amendment claim); *Leary*, 528 F.3d at 443 (allegation that deputy hit pretrial detainee on the neck with no intention to hurt him, in "a karate chop kind of deal," held to be a *de minimis* use of force); *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (holding that officers "minimal application of force, together with Lockett's admitted minor injuries, did not rise to a level that is sufficient to sustain an Eighth Amendment claim").

The Complaint fails to state a claim against the Defendants Sgt. Parker, C/O Parker, Daniels, and Chumley. Walls does not recite any details regarding actions that occurred before the assault, and his conclusory allegations that it was done as part of a conspiracy or in retaliation are insufficient to support an Eighth Amendment claim for assault; therefore, Walls's claims of excessive force against the aforementioned Defendants are DISMISSED.

G. Assignment

Walls has no claims to the extent that he alleges that he was wrongly assigned to the Unit 1 building or falsely sent to super maximum security. An inmate does not have a protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976). *See Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship" "in relation to the ordinary incidents of prison life").

H. Retaliation

Walls alleges, broadly, that that the Defendants retaliated against him. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

Walls's claims for retaliation appear to be based on the continued assignment to Unit 1 as well as in response to the firing of C/O's Thompson and Carr. As discussed *supra*, Walls's assignment was not protected conduct, and his allegations fail to support claims against any defendant for actions taken after the alleged assault. Walls also does not allege what actions he was "deterred" from taking. Further, allegations of retaliation for filing this lawsuit before the complaint was filed, fails to allege retaliatory conduct. These allegations of retaliation are DISMISSED.

I.  Conspiracy

Walls also alleges that the Defendants' actions were part of a general conspiracy against him. The Court holds, however, that the Complaint does not plausibly allege a civil conspiracy. The Sixth Circuit has defined a civil conspiracy claim under § 1983 as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general

14

> conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.
>
> 330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). A court need not accept as true a bare assertion, unaccompanied by supporting facts, that parties conspired with each other. *Id.* at 563-64 (collecting cases). An allegation of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required. *Id.* at 564. Here Walls's allegations that Defendants conspired with each other is entirely devoid of supporting facts. As such, the Complaint fails to state a claim for civil conspiracy. That claim is therefore DISMISSED.

### III. Pending Motions

On October 23, 2017, Walls filed a motion for *subpoena deuces tecum*. (ECF No. 13.) The court construes this motion as a request for production of documents under Rule 34(b). The request shall be served with the complaint, and the defendant shall respond according to the Federal Rules of Civil Procedure and the Local Rules of this court.

On October 23, 2017, Walls filed a motion to appoint counsel. (ECF No. 15.) Pursuant to 28 U.S.C. § 1915(d), the "court may request an attorney to represent any such person unable to employ counsel." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil

litigants, *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Generally, a court will only appoint counsel in exceptional circumstances. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Because Walls has not met the threshold showing likelihood of success, the motion is DENIED.

On March 22, 2018, Walls filed a Motion for Partial Summary Judgment. (ECF No. 12). Walls asserts that he has undisputed facts which entitle him to summary judgement. (ECF No. 24-1 at 1.) This motion is DENIED WITHOUT PREJUDICE. The only remaining Defendant on this motion, C/O Thompson, has not been served with process, and therefore has not had the opportunity to refute Walls's claims. Walls may renew this motion after the complaint has been served on C/O Thompson. Furthermore, the Walls's Motions for a Settlement Conference (ECF No. 22) and for a Rule 16 Scheduling Conference (ECF No. 27) at this juncture are DENIED because this case will proceed in accordance with the Federal Rules of Civil Procedure. (*Id.*)

## CONCLUSION

The Court **DISMISSES** Walls's Complaint against Defendants TDOC, WTSP, TDOC Commissioner Parker, Lebo, Carr, Fitz, Jones, DeBerry, Gallaway, WTSP Sgt. Parker, WTSP C/O Parker, Daniels, Chumley, Pittman, Hughes, Smith, and all official capacity claims all for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Walls has alleged a plausible Eighth Amendment failure to protect claim against Defendant Thompson in his individual capacity.

It is **ORDERED** that the Clerk shall issue process for Defendant Thompson and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Thompson pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally, if mail service is not effective. All costs of service shall by advanced by the United States.

It is further **ORDERED** that Walls shall serve a copy of every subsequent document he files in this case on the attorneys for Thompson or on any unrepresented Defendant. Walls shall include a certificate of service on every document filed. Walls must also familiarize himself with Federal Rules of Civil Procedure and the Local Rules of Court.[3] Walls should promptly notify the Clerk, in writing, of any change of address, transfer to another facility, release from custody, or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of the case without further notice.

**SO ORDERED**, this 18th day of July, 2018.

                                                /s/ Jon P. McCalla
                                                JON P. McCALLA
                                                UNITED STATES DISTRICT JUDGE

---

[3] A copy of the Local Rules may be obtained from the Clerk of Court. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.